# In the United States Court of Federal Claims

## OFFICE OF SPECIAL MASTERS
### No. 11-221V
### (To be Published)

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

| | | |
|---|---|---|
| SCOTT SCHARFENBERGER, | \* | |
| | \* | Special Master Corcoran |
| Petitioner, | \* | |
| | \* | Dated: May 15, 2015 |
| v. | \* | |
| | \* | Attorney's Fees and Costs; |
| | \* | Washington, D.C. Forum Rate; |
| SECRETARY OF HEALTH AND | \* | Paralegal Rates; Costs for |
| HUMAN SERVICES, | \* | Experts Retained to Support |
| | \* | Fee Petition; Lost Wages |
| Respondent. | \* | Experts |
| | \* | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

*Isaiah Richard Kalinowski*, Maglio Christopher and Toale, PA, Washington, DC, for Petitioner.

*Lara Ann Englund*, U.S. Dep't of Justice, Washington, DC, for Respondent.

## ATTORNEY'S FEES AND COSTS DECISION[1]

On April 8, 2011, Scott Scharfenberger filed a petition seeking compensation under the National Vaccine Injury Compensation Program (the "Vaccine Program").[2] The case was successfully settled in Petitioner's favor approximately three years later. Petitioner now requests an award of attorney's fees and costs in the amount of approximately $103,000, but Respondent has questioned the rates to be paid to Petitioner's counsel and paralegals, as well as certain costs incurred by experts retained in this matter. As discussed below, I hereby grant in part and deny in part Petitioner's fee request, and award fees and costs in the total amount of $79,213.71.

---

[1] Because this decision contains a reasoned explanation for my actions in this case, I will post it on the United States Court of Federal Claims website, in accordance with the E-Government Act of 2002, Pub. L. No. 107-347, § 205, 116 Stat. 2899, 2913 (codified as amended at 44 U.S.C. § 3501 note (2006)). As provided by 42 U.S.C. § 300aa-12(d)(4)(B), however, the parties may object to the published decision's inclusion of certain kinds of confidential information. Specifically, under Vaccine Rule 18(b), each party has fourteen days within which to request redaction "of any information furnished by that party: (1) that is a trade secret or commercial or financial in substance and is privileged or confidential; or (2) that includes medical files or similar files, the disclosure of which would constitute a clearly unwarranted invasion of privacy." Vaccine Rule 18(b). Otherwise, the whole decision will be available to the public. *Id*.

[2] The Vaccine Program comprises Part 2 of the National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3758, codified as amended at 42 U.S.C. §§ 300aa-10 through 34 (2006) [hereinafter "Vaccine Act" or "the Act"]. Individual section references hereafter will be to § 300aa of the Act.

**Procedural History**

Mr. Scharfenberger's petition, filed in April of 2011, alleged that he suffered Guillain-Barré syndrome as a result of receipt of the trivalent influenza vaccine. Pet. at 3 (ECF No. 1). As the billing records submitted in connection with this fee petition indicate, Mr. Scharfenberger retained the law firm of Maglio Christopher and Toale, PA ("MCT") nearly eight months prior to the date he filed his petition. Ex. 23, MCT Fees and Costs (ECF No. 53-1).

In the months after initiating this action, Petitioner filed medical records relevant to his claim. Respondent subsequently filed a Rule 4(c) report on October 14, 2011, asserting that the claim was not appropriate for compensation. ECF No. 14. Before the parties began the process of obtaining experts, however, settlement negotiations started in December of 2011 (ECF No. 20), and continued for the next two years. The billing records filed in connection with the present fee petition and case docket reflect that the parties and their counsel were during this time diligently engaged in attempting to resolve the matter. Thus, in 2012 and 2013, Petitioner prepared and filed an affidavit (*see* Mar. 16, 2012, Affidavit (ECF No. 22)), along with additional medical records to support his claim (*see* Nov. 20, 2012, filing (ECF No. 27), and Feb. 14, 2013 filing, (ECF No. 31)). Throughout this process, Petitioner also reported that he was working closely with an economist to estimate accurately his lost wages for the purpose of the settlement demand. *See, e.g.*, Status Report, dated Apr. 9, 2013 (ECF No. 33). Petitioner eventually sent Respondent that demand on April 29, 2013, and after receiving feedback from Respondent on May 9, 2013, revised his demand on June 25, 2013. Status Report, June 25, 2013 (ECF No. 35).

The parties continued their settlement discussions through the summer of 2013. ECF No. 36.[3] After the passage of numerous unsuccessful months of settlement negotiations, the parties agreed to engage in a mediation session held on December 13, 2013. That mediation succeeded, and three days later on December 16, 2013, the parties requested a fifteen-week stipulation order. ECF No. 39. After the parties filed a final stipulation requesting an award of compensation, I issued a damages decision dated February 7, 2014. ECF No. 45. Judgment was entered on February 11, 2014 (ECF No. 47), awarding a lump sum of $270,000.00 to Petitioner.

Counting from the judgment date, Petitioner's fee request was due 180 days thereafter or by August 11, 2014. Vaccine Rule 13(a). After requesting and receiving two extensions of time, Mr. Scharfenberger filed the present motion for reimbursement of attorney's fees and costs on November 24, 2014. ECF No. 52 ("Fee App."). In it, he requests compensation in the amount of $61,983.70 for his attorney, Isaiah Kalinowski, Esq. of MCT, based on a billing rate of $361/hour, plus $7,694.10 for the MCT paralegals who worked on the case, based upon rates ranging from $75 to $145/hour. Combined, Mr. Kalinowski and the MCT paralegals expended

---

[3] Mr. Kalinowski's billing records (offered in support of the present fee petition) reflect and corroborate the attorney time expended during this negotiation period.

235.1 hours in this case for a total of $69,677.80 in fees, calculated with their requested rates. Fee App. at 1.

In addition to attorney's fees, Mr. Scharfenberger also requests $33,475.21 in costs incurred in this case. Included in those costs[4] are: (a) $11,420.50 for Clifton Larson Allen, LLP ("Clifton"), an accounting firm that provided a lost wages calculation used in the parties' settlement discussions; and (b) $12,561.00 for the services of two attorneys at Zuckerman Spaeder, LLP ("Zuckerman"). The Zuckerman attorneys together prepared a lengthy declaration from William Murphy, Esq. (a litigation attorney who has been practicing for well over thirty-five years, and appears to have expertise in resolving attorney fee disputes) setting forth his views regarding the appropriate hourly rate to be applied in calculating the amount of Petitioner's present fee request. In total, Petitioner requests fees and costs of $103,153.01.

Petitioner's fee request is supported by a variety of exhibits. In addition to attorney and other professional service invoices, Petitioner has submitted affidavits and declarations from a variety of practicing attorneys, including Petitioner's own attorney Mr. Kalinowski (Ex. 28, Declaration of Pet'r's Counsel in Support of Pet'r's Application for Fees & Costs (ECF No. 53-6)), Mr. Maglio (a named partner at MCT) (Ex. 29, Declaration of Altom M. Maglio, Esq. (ECF No. 53-7)), and the Zuckerman attorneys. *See, e.g.*, Ex. 26, Declaration of William Murphy (ECF No. 53-4). Mr. Scharfenberger also filed an affidavit from a certified paralegal, plus legal authority that he asserts supports his application for fees and costs. *See generally* Ex's 27, 32, 39, and 40.

Respondent filed an opposition to Petitioner's fees and costs request on January 12, 2015 (ECF No. 57) ("Fee App. Opp."), outlining several objections to the two broad categories of requested reimbursements. With respect to the fees for Mr. Kalinowski and his support staff, Respondent objects that the requested hourly rates are unreasonably high. *Id*. at 10. Respondent proposes instead that Mr. Kalinowski be compensated on a graduated scale starting at $215/hour for work performed in 2010, and rising to $231/hour for work performed in 2014. *Id*.[5] Respondent further proposes that a reasonable MCT uncertified paralegal rate is $91/hour, while the reasonable rate for MCT registered or certified paralegals is $112/hour. *Id*. at 12. Respondent also maintains that MCT engaged in inefficient billing unjustified by the rate charged, in addition to billing for *de minimis* administrative or ministerial tasks. *Id*. at 13. And Respondent urges me to disallow costs associated with the Clifton accounting experts used by Mr. Scharfenberger in

---

[4] Petitioner also claims additional costs of $9,493.71, to which Respondent has offered no comment or objection. Based on my review of the record, I find these charges (which include items such as the costs associated with obtaining medical records, and the fee charged by the independent mediator retained to assist the settlement process) to be reasonable. I therefore award this amount.

[5] There appears to be an error in Respondent's Fee Application Opposition with regard to dates. Respondent says that three different rates are appropriate for work performed in 2012, but does not provide any figure for 2010 and 2011. Fee App. Opp. at 10. I will infer from the overall thrust of Respondent's argument that the first two figures Respondent supplies were actually meant to address work performed in 2010 and 2011.

settling the action, as well as the Zuckerman attorneys who assisted with the present fee motion. *Id.* at 14-15.

Petitioner thereafter filed a reply on January 20, 2015 (ECF No. 58) ("Reply"), addressing each of Respondent's points in turn and re-asserting that the total sum of previously requested fees and costs was reasonable. Petitioner specifically argues that Respondent has mischaracterized Petitioner's argument regarding the applicability of *Laffey v. Northwest Airlines, Inc.*, 572 F. Supp. 354 (D. D.C. 1983), *rev'd in part on other grounds*, 746 F.2d 4 (D.C. Cir. 1984) to the rate analysis. He also asserts that the proper forum for measuring Mr. Kalinowski's rate is Washington, DC broadly, and that Petitioner has offered a plethora of persuasive evidence to that effect. *Id.* at 6-8. In addition, Petitioner asserts that Respondent has failed to meet her legal burden of setting forth sufficiently detailed objections to the time expended by Petitioner's counsel. *Id.* at 20-22.

Mr. Scharfenberger's application for attorney's fees and costs is now ready for adjudication.

## ANALYSIS

### I.    General Principles Regarding Attorney's Fees and Costs Awards

Vaccine Program petitioners who receive compensation for their injuries are by statute entitled to an award of attorney's fees and costs. However, such fees and costs must be "reasonable." Vaccine Act § 15(e)(1). It is for the special master to evaluate and decide whether this is the case. *See Perreira v. Sec'y of Health & Human Servs.*, 27 Fed. Cl. 29, 34 (1992), *aff'd*, 33 F.3d 1375 (Fed. Cir. 1994). To this end, special masters have discretion in determining what a reasonable fee award is, and may reduce hours *sua sponte*, apart from objections raised by Respondent and without providing a petitioner notice and opportunity to respond. *See Sabella v. Sec'y of Health & Human Servs.*, 86 Fed. Cl. 201, 208-09 (2009); *Perreira*, 27 Fed. Cl. at 34 (special master has "wide discretion in determining the reasonableness" of attorney's fees and costs).

The special master is not obligated to evaluate a fee petition on a line-by-line basis. *Saxton v. Sec'y of Health & Human Servs.*, 3 F.3d 1517, 1521-22 (Fed. Cir. 1993) (approving the special master's elimination of 50 percent of the hours claimed); *see also Broekelschen v. Sec'y of Health & Human Servs.*, 102 Fed. Cl. 719, 728–29 (2011) (affirming the special master's reduction of attorney and paralegal hours); *Guy v. Sec'y of Health & Human Servs.*, 38 Fed. Cl. 403, 406 (1997) (affirming the special master's reduction in the number of hours from 515.3 hours to 240 hours); *Edgar v. Sec'y of Health & Human Servs.*, 32 Fed. Cl. 506 (1994) (affirming the special master's awarding only fifty-eight per cent of the numbers of hours for which compensation was sought). Rather, as the United States Supreme Court instructs, when awarding attorney's fees, special masters may use estimates to achieve "rough justice." *Fox v.*

*Vice*, 131 S. Ct. 2205, 2216 (2011).

Determining the appropriate amount of an award of reasonable attorney's fees is a two-part process. The first part involves application of the lodestar method – "multiplying the number of hours reasonably expended on the litigation times a reasonable hourly rate." *Avera v. Sec'y of Health & Human Servs.*, 515 F.3d 1343, 1347-48 (Fed. Cir. 2008) (quoting *Blum v. Stenson*, 465 U.S. 886, 888 (1984)). The second part involves adjusting the lodestar calculation up or down. *Avera*, 515 F.3d at 1348. This standard for calculating a fee award is considered applicable in most cases where a fee award is authorized by federal statute. *Hensley v. Eckerhart*, 461 U.S. 424, 429-37 (1983).

An attorney's reasonable hourly rate is more precisely understood to be the "prevailing market rate" in the relevant forum. *Avera*, 515 F.3d at 1349; *Rodriguez v. Sec'y of Health & Human Servs.*, No. 06-559V, 2009 WL 2568468, at *2 (Fed. Cl. Spec. Mstr. July 27, 2009), *mot. for rev. denied*, 91 Fed. Cl. 453 (2010), *aff'd*, 632 F.3d 1381 (Fed. Cir. 2011). That rate is in turn determined by the "forum rule," which bases the award rate on rates paid to similarly qualified attorneys in the forum where the relevant court sits (Washington, DC for Vaccine Act cases). *Avera*, 515 F.3d at 1348.[6] After the hourly rate is determined, the reasonableness of the total hours expended must be considered. *Sabella,* 86 Fed. Cl. at 205-06. This inquiry mandates consideration of the work performed on the matter, the skill and experience of the attorneys involved, and whether any waste or duplication of effort is evident. *Hensley*, 461 U.S. at 434, 437.

Evaluating an attorney's fee application involves more than the mere performance of a mathematical calculation. In analyzing all stages of the lodestar calculation, I must determine if the fee applicant has established the reasonableness of the billing rate and work performed. *Mares v. Credit Bureau of Raton*, 801 F.2d 1197, 1210 (10th Cir. 1986) ("[i]t remains counsel's burden to prove and establish the reasonableness of each dollar, each hour, above zero.").[7] Quoting a decision by the United States Supreme Court, the Federal Circuit has characterized the contours of a reasonable fee request:

> The [trial forum] also should exclude from this initial fee calculation hours that were not "reasonably expended." . . . Counsel for the prevailing party should make a good-faith effort to exclude from a fee request hours that are excessive, redundant, or otherwise unnecessary, just as a lawyer in private practice ethically is obligated to exclude such

---

[6] There is also an exception to the forum rule that applies if the bulk of the attorney's work was performed outside of Washington, DC, in a location where prevailing rates are substantially lower. *Avera*, 515 F.3d at 1349. That exception is inapplicable here because Mr. Kalinowski works, and has his office, in the District of Columbia. Fee App. at 23; Fee App Opp. at 5.

[7] Although *Mares* did not interpret the Vaccine Act's fees provisions, fee-shifting statutes are interpreted similarly. *Avera*, 515 F.3d at 1348.

hours from his fee submission. "In the private sector, 'billing judgment' is an important component in fee setting. It is no less important here. Hours that are not properly billed to one's client also are not properly billed to one's adversary pursuant to statutory authority."

*Saxton*, 3 F.3d at 1521 (quoting *Hensley*, 461 U.S. at 433-34).

Petitioners bear the same reasonableness burden in seeking to obtain an award of costs. *Perreira*, 27 Fed. Cl. at 34; *Presault v. United States*, 52 Fed. Cl. 667, 670 (2002). When petitioners fail to carry this burden, such as by not providing appropriate documentation to substantiate a requested cost, special masters have refrained from awarding compensation. *See, e.g., Gardner-Cook v. Sec'y of Health & Human Servs.*, No. 99-480V, 2005 WL 6122520, at *4 (Fed. Cl. Spec. Mstr. June 30, 2005). This practice is consistent with how the Federal Circuit and the Court of Federal Claims (the courts responsible for reviewing the decisions of special masters) have interpreted other federal fee-shifting statutes. *See Naporano Iron & Metal Co. v. United States*, 825 F.2d 403, 404 (Fed. Cir. 1987) (interpreting the Equal Access to Justice Act); *Presault*, 52 Fed. Cl. at 679 (interpreting the Uniform Relocation Assistance and Land Acquisition Policies Act of 1970).

## II.       Specific Issues Raised by Petitioner's Fee Application

Respondent challenges (a) Mr. Kalinowski's requested hourly rate; (b) MCT paralegals' hourly rates; (c) the total hours billed; and (d) the expert expenses incurred by Clifton and Zuckerman. I will address these challenges in that order.

### A.     *Mr. Kalinowski's Hourly Rate*

Petitioner requests that Mr. Kalinowski receive an hourly rate of $361/hour, arguing that this rate is reasonable based on a number of grounds – some of which relate to the framework for evaluating a requested fee rate, while others focus on Mr. Kalinowski's expertise as a Vaccine Program attorney. Reply at 1-5. Respondent proposes that Mr. Kalinowski be compensated at the lower rate of $215/hour for work performed in 2010, increasing to $231/hour for work performed in 2014. Fee App. Opp. at 10.

1. Analytic Framework for Determining the Proper Hourly Rate – At the outset, Mr. Scharfenberger maintains that my application of the lodestar analysis should take into account the matrix established in *Laffey* [the *Laffey* matrix]. Reply at 10-11. Respondent counters that the *Laffey* matrix is inapplicable in determining the proper hourly rate to pay a Vaccine Program attorney. Fee App. Opp. at 6.

The *Laffey* matrix is a schedule of attorney billing rates (arranged by experience level and adjusted for inflation) used to determine the appropriate pay for an attorney engaging in federal litigation in cases involving fee-shifting statutes (such as "loser pays" statutes that award

attorney's fees to the prevailing party in a lawsuit). *Rodriguez*, 632 F.3d 1381, 1384-85; *see also Laffey*, 572 F. Supp. at 372. Respondent acknowledges that if the *Laffey* matrix controlled the outcome herein, Petitioner's counsel would be entitled to $360/hour for work done in 2014 (with the work done in previous years in this matter compensated at a graduated lower rate).

Although the parties differ somewhat as to which "version" of the *Laffey* matrix is relevant[8], they both agree that the *Laffey* matrix does not in fact control rate determination for Vaccine Program cases. Reply at 10-11; *Rodriguez*, 2009 WL 2568468, at *10 (citing additional case law supporting this proposition). This is because, as other special masters have observed, "these matrices apply to 'complex federal litigation,' which differ from streamlined Vaccine Act cases." *Guerrero v. Sec'y of Health & Human Servs.*, No. 12-689V, 2015 WL 1275384, at *6 (Fed. Cl. Spec. Mstr. Mar. 4, 2015) (citing *Rodriguez*, 632 F.3d at 1384-85). The Federal Circuit has also affirmed that Vaccine Program lawyers do not provide "similar services" to the attorneys receiving *Laffey* matrix rates. *Masias v. Sec'y of Health & Human Servs.*, No. 99-697V, 2009 WL 1838979, at *20, *27 (Fed. Cl. Spec. Mstr. June 12, 2009), *mot. for review den'd*, slip op. (Fed. Cl. Dec. 10, 2009), *aff'd*, 634 F.3d 1283 (Fed. Cir. Mar. 15, 2011). Vaccine Program cases are viewed as categorically less complex from a process standpoint (even if they do involve complex scientific and factual matters), because, among other things, the presentation of evidence in Vaccine Program cases is not governed by the Federal Rules of Evidence, and cases are not tried to a jury. *Masias*, 2009 WL 1838979, at *20-22.

Despite the above, Petitioner presses the argument that (as the Federal Circuit has also recognized), a special master should still take into account the *Laffey* matrix in calculating the forum rate, citing *Rodriguez*, 632 F.3d. at 1386. *Rodriguez*, however, primarily held that *Laffey* should **not** be used to calculate fees for Vaccine Program cases, as these cases differ significantly from the complex federal litigation for which *Laffey* was designed. *Id.* at 1384-85; *see also Guerrero*, 2015 WL 1275384, at *6. Accordingly, although I have considered *Laffey* in deciding the rate at which Mr. Kalinowski should be compensated, I will not give it the weight Petitioner argues for.

---

[8] Petitioner cites to a version set forth on a public website. *See, e.g.*, Reply at 5, 10, 11 (citing "Laffey Matrix," http://www.laffeymatrix.com/see html). Respondent, by contrast, cites the version published on the Department of Justice's website. "Laffey Matrix – 2003-2014," Department of Justice, http://www.justice.gov/usao/dc/divisions /Laffey_Matrix%202014.pdf (last visited Mar. 25, 2015). Mr. Murphy's declaration also accepts Respondent's version. *See, e.g.*, Exhibit 26 at ¶16. Although applying either version would result in almost the same "top" rate, Respondent correctly points out that under its referenced version, Mr. Scharfenberger would not be entitled to apply that highest rate to all work performed in the action, because to do so would be to impermissibly charge interest against the Government. Fee App. Opp. at 6 (citing *Hocraffer v. Sec'y of Health & Human Servs.*, No. 99-533V, 2011 WL 3705153, at *17-19 (Fed. Cl. Spec. Mstr. July 25, 2011)).

Herein, to the extent I take into account the *Laffey* matrix in reaching my decision, I follow the version used by Respondent, consistent with the approach of other special masters. *See, e.g.*, *Guerrero*, 2015 WL 1275384, at *6 n.7 (citing *Rodriguez*, 632 F.3d at 1384).

The parties also dispute how to define the relevant forum. Petitioner argues that the relevant forum is the District of Columbia itself, and should not be narrowed to the U.S. Court of Federal Claims or the Vaccine Program, while Respondent argues for the contrary. Fee App. Opp. at 5-7; Reply at 2.

Respondent is correct on this point. Even though the Federal Circuit has held that the forum rate used for Vaccine Program attorneys should be that of the District of Columbia generally (*Rodriguez*, 632 F.3d at 1384 (citing *Avera*, 515 F.3d at 1349)), it has also held that a "reasonable" hourly rate is, at bottom, defined as the rate "prevailing in the community for *similar* services by lawyers of reasonably comparable skill, experience, and reputation." *Id.* at 1385 (citing *Avera*, 515 F.3d at 1348 (emphasis added)). Here, the Vaccine Program itself provides the most relevant baseline for comparing attorney billing rates – given the differences between the challenges of such litigation versus the more onerous tasks imposed on litigators subject to the federal rules and other procedural and evidentiary burdens outside the Vaccine Program. *Masias*, 634 F.3d 1283 at 1290. The fact that Vaccine Program attorneys are (in most cases) assured of some compensation for their work, unlike their counterparts litigating in federal district courts, also bears on the matter. *Rodriguez*, 632 F.3d at 1381.

Thus, when determining what a reasonable hourly rate is, it is appropriate to focus my analysis on the Vaccine Program, which is highly specific in its form and substance. *See, e.g.*, *Isaac v. Sec'y of Health & Human Servs.*, No. 08-601V, 2012 WL 3609993, at *18 (Fed. Cl. Spec. Mstr. July 30, 2012), *mot. for review den'd*, 108 Fed. Cl. 743 (2013), *aff'd*, 540 Fed. App'x 999 (Fed. Cir. 2013) (referring to the different role of the special master given the unique nature of the Vaccine Program); *Berger v. Sec'y of Health & Human Servs.*, No. 05-1120V, 2008 WL 269524, at *4 (Fed. Cl. Spec. Mstr. Jan. 14, 2008) (referring to the "unique statutory requirements of proof applied within the Vaccine Program" to argue that discovery is not a right in Vaccine Programs, in contrast to other types of litigation).

2. Proper Forum Rate - A starting point for arriving at the correct forum rate is to consider what rate other similarly-situated attorneys have obtained for their work on Vaccine Program cases. In *Masias*, a special master found that a reasonable rate for experienced Vaccine Program attorneys from Washington, D.C. was $250 to $375/hour. *Masias*, 2009 WL 1838979, at *25. Another special master arrived at a similar range in *Rodriguez*. *Rodriguez*, 2009 WL 2568468, at *15. After analyzing a wide scope of evidence, the special master in *Rodriguez* found that a reasonable hourly rate for attorneys with more than 20 years of experience, and with specific experience in the Vaccine Program, was $275 to $360/hour, depending on the year the work was performed. *Id.*

I find both the *Masias* and *Rodriguez* decisions, both of which were affirmed by the Federal Circuit, rigorous in their analysis and particularly persuasive. Accordingly, I adopt their reasoning that a reasonable range for attorneys with ten or more years of experience providing

services in the Vaccine Program in Washington, DC is $250 to $375/hour. Because both of these decisions are from 2009, however, I must also adjust the proposed fee ranges for subsequent inflation. The Bureau of Labor Statistics has a Consumer Price Index ("CPI") inflation calculator, which calculates the average CPI for a given calendar year. *CPI Inflation Calculator*, U.S. Bureau of Labor Statistics, http://www.bls.gov/data/inflation_calculator.html (last updated April 15, 2014) ("CPI Calculator"); *see also Impresa Construzioni Geom. Domenico Garufi v. United States*, 100 Fed. Cl. 750 (2011) (employing CPI calculator to determine whether cost of living had risen following the passage of the Equal Access to Justice Act). The data upon which the calculation is based reflect yearly changes in prices of all goods and services purchased for consumption by urban households. Based upon the latest monthly index value, $250 in 2009 has the same buying power as $272.66 in 2015, while $375 in 2009 has the same buying power as $409.49 in 2015. *See generally* CPI calculator. Accordingly, the adjusted range for 2015 is $272.66 to $409.49/hour.[9]

      3. <u>Application to Petitioner's Requested Rate</u> - The mere fact that an attorney is "experienced" in litigating Vaccine Program cases does not always result in a fee award calculated at the top of the scale. Thus, in the past two years, special masters have ruled on more than one occasion that a rate of approximately $300/hour is appropriate.

      For example, Sean Greenwood, Esq., an attorney with nearly twenty years of experience was recently awarded this sum (*see, e.g.*, *Garrett v. Sec'y of Health & Human Servs.*, No. 14-16V, 2014 WL 6237632, at *6 (Fed. Cl. Spec. Mstr. Oct. 27, 2014) (award in dismissed case alleging multiple vaccination/diabetes claim)), as was Mark L. Krueger, Esq., a partner in a Wisconsin law firm with over twenty-seven years of experience (*see, e.g.*, *Gill v. Sec'y of Health & Human Servs.*, No. 12-825V, 2014 WL 5341869, at *7 (Fed. Cl. Spec. Mstr. Sept. 30, 2014) (interim attorney's fee application for an ongoing flu/multiple sclerosis and immune deficiency claim). Patricia Finn, Esq., a Vaccine Program-focused lawyer with twelve years of experience was awarded a slightly higher rate of $310/hour. *See Becker v. Sec'y of Health & Human Servs.*, No. 13-687V, 2014 WL 4923160, at *6 (Fed. Cl. Spec. Mstr. Sept. 11, 2014) (another interim attorney's fee application regarding a Table Injury encephalopathy claim). By contrast, other special masters have awarded fees based on an hourly rate comparable to what Petitioner requests, but to attorneys with even more general and vaccine-specific experience. *See, e.g.*, *Guerrero*, 2015 WL 1275384 (awarding a rate of $355/hour to petitioner's counsel, Lisa Roquemore, Esq., with approximately twenty-five years general experience and extensive Vaccine Program familiarity).[10]

---

[9] All other inflation calculations in this decision are calculated using the CPI calculator.

[10] Of course, the decisions of other special masters are only persuasive authority (unlike the decisions of the Federal Circuit). *Guillory v. Sec'y of Health & Human Servs.*, 59 Fed. Cl. 121, 124 (2003), *aff'd*, 104 F. App'x 712 (Fed. Cir. 2004); *Hanlon v. Sec'y of Health & Human Servs.*, 40 Fed. Cl. 625, 630 (1998). I nevertheless consider what other special masters have awarded similarly-situated attorneys in order to achieve a just result herein.

When determining the forum rate for lawyers of comparable skill, experience, and reputation, the parties typically provide objective evidence of market rates. *Dougherty v. Sec'y of Health & Human Servs.*, No. 05-700V, 2011 WL 5357816, at *6 (Fed. Cl. Spec. Mstr. Oct. 14, 2011).[11] As with his overall burden in establishing the reasonableness of his fee request, Mr. Scharfenberger must therefore establish what rate his counsel should receive. *Rodriguez*, 2009 WL 2568468, at *13.

Mr. Scharfenberger supports the requested $361 hourly rate with a variety of evidence. First, Petitioner invokes the *Laffey* matrix as supporting the $361/hour figure, because "*Laffey* is referenced as a data point within many different contexts by the courts of the Washington, D.C. forum." Reply at 10-11. As noted above, however, the *Laffey* matrix does not have the precedential force that Petitioner seeks to imbue it with, and otherwise does not control this analysis.

Second, Petitioner provides a declaration from Mr. Murphy commenting on what is a reasonable hourly rate within Washington, DC, and based on that what Mr. Kalinowski should be awarded. I do not find this evidence particularly persuasive, however, or even helpful to my analysis. Mr. Murphy[12] has absolutely no direct Vaccine Program experience, and does not appear to be admitted to practice in the Court of Federal Claims, rendering the opinions contained in his declaration of limited value. Other special masters have not required expert assistance in determining a proper hourly rate to be paid a Vaccine Program attorney, nor do I (and I certainly did not request that Petitioner go to the trouble of retaining an outside expert to opine on fee issues).

Far more relevant to my determination is the demonstrated experience of Mr. Kalinowski himself. After graduating from law school in 2005, he spent approximately 18 months in private practice, and then the next four years of his career as a law clerk in the Office of Special Masters. Thereafter he joined MCT (a firm that regularly represents Vaccine Program petitioners) in 2010,

---

[11] I am not confined to the evidence provided by the parties and can look to other evidence *sua sponte* to determine a reasonable hourly rate. *Dougherty*, 2011 WL 5357816, at *6.

[12] Mr. Murphy's 14-page declaration is entitled an "expert report," and contains ample legal citation in support of Petitioner's requested hourly rate. *See generally* Ex. 26. I note, however, that Mr. Kalinowski filed two briefs totaling nearly 45 pages setting forth many of the same legal arguments advanced in Mr. Murphy's declaration. Thus, Mr. Murphy merely proposes to provide an expert opinion on what the law for compensating Petitioner's counsel *is*, something that (coming from an expert rather than counsel in the action) has low value to a court – and in fact invades the province of this tribunal in determining the law. *See, e.g., Mola Dev. Corp. v. United States*, 516 F.3d 1370, 1379 n.6 (Fed. Cir. 2008) (affording no weight to affidavit of former government official interpreting thrift regulations); *El–Shifa Pharm. Indus. Co. v. United States*, 378 F.3d 1346, 1361 (Fed. Cir. 2004) ("it is emphatically the province and duty of the judicial department to say what the law is") (quoting *Marbury v. Madison*, 5 U.S. (1 Cranch) 137, 177, 2 L.Ed. 60 (1803)).

where he spent two years litigating Vaccine Program cases before becoming a partner in 2012.[13] He is currently identified as counsel in 21 active Vaccine Program cases. Mr. Kalinowski's experience litigating Vaccine Program cases for petitioners should be reflected in the ultimate rate determination herein – as should the fact that he has less overall experience than other Vaccine Program attorneys who command rates commensurate with what Petitioner requests.

The hourly rate for Mr. Kalinowski's services should also fit within the context of billing rates that other MCT lawyers have obtained. MCT lawyers have historically been awarded fees based on a lower rate than that requested herein. Taking into account inflation, Mr. Maglio and Ms. Toale ("name" MCT partners with 42 years of experience between them) have been awarded fees in recent cases based on hourly rates in the range of approximately $271 to $300/hour when adjusted for inflation. *See, e.g.*, *Gruber v. Sec'y of Health & Human Servs.*, 91 Fed. Cl. 773 (Feb. 25, 2010) (awarding Ms. Toale $275/hour for attorney work completed in 2008); *Bougie v. Sec'y of Health & Human Servs.*, No. 08-102V, 2009 WL 982650, at *4 (Fed. Cl. Spec. Mstr. Mar. 23, 2009) (same); *English v. Sec'y of Health & Human Servs.*, No. 01-61V, 2006 WL 3419805 (Fed. Cl. Spec. Mstr. Nov. 9, 2006) (awarding Mr. Maglio and Ms. Toale $225/hour for work completed in 2005 and 2006). Indeed, in the very recent decision of *O'Neill v. Sec'y of Health & Human Servs.*, No. 08-243V, slip op. at 8 (Fed. Cl. Spec. Mstr. Apr. 28, 2015), Ms. Toale was awarded $300/hour for work performed in 2011-2013 - $302.27/hour for work performed in 2015 after adjusted for inflation.

This is significant. Firms like MCT with regular Vaccine Program practices observe rate differentials among their attorneys. In *Jones v. Sec'y of Health & Human Servs.*, No. 11-70V, 2014 WL 7508006, at *5 (Fed. Cl. Spec. Mstr. Dec. 4, 2014), for example, a petitioner represented by attorneys at Conway, Homer & Chin-Caplan, PC (a firm that frequently appears in the Vaccine Program) put forth as evidence the rates billed by its associates ($203 to $218/hour) versus partners ($300 to $330/hour). This gradation in billing is common at law firms and is a sensible, market-based approach to charging clients based on the relative experience of their attorneys. *Rodriguez*, 2009 WL 2568468, at *14 ("[a] reasonable fee is what a willing buyer would pay a willing seller.") Thus, although Mr. Kalinowski is a partner at MCT, his billing rate should reflect what his own firm successfully charges for like-situated, or more-experienced, attorneys.

In attacking the requested rate, Respondent provides contrary comparisons that she asserts favor a significantly lower rate (between $215 to $231/hour), but they do not fully bolster her argument. Thus, Respondent offers the example of John McHugh, Esq. (Fee App. Opp. at 7),

---

[13] This is a fairly brief time in which to ascend to partner in comparison to the experiences of most DC-based attorneys, who routinely labor for ten years or more before being called to a firm's partnership. While I take this as some evidence of Mr. Kalinowski's expertise and qualifications, I also note that it is another factor delineating the differences between the Vaccine Program practice and the experiences of other D.C.-based lawyers – and hence an additional ground for giving the *Laffey* matrix far less weight in my analysis than Petitioner urges.

a New York City-based attorney who had many more years of total experience than Mr. Kalinowski at the time of his fee request (although less direct Vaccine Program experience); he was awarded a rate in 2009 of $335/hour ($369.66 today). *Rodriguez*, 2009 WL 2568468, at *14. Although this one instance may counsel against providing a comparably high rate in this case given Mr. Kalinowski's comparatively less overall experience, it does not invalidate the fact that Mr. Kalinowski has significant *overall* Vaccine Program experience (including his time at the Office of Special Masters) that must be taken into account. *See Ramsey v. Sec'y of Health & Human Servs.*, No. 07-21V, 2009 WL 3423038 (Fed. Cl. Spec. Mstr. Oct. 7, 2009) (emphasizing the importance of specialized Vaccine Program knowledge by balancing petitioner's counsel's extensive litigation experience with his relative inexperience in the Vaccine Program to determine the appropriate hourly rate); *see also Spell v. McDaniel*, 852 F.2d 762, 768 (4th Cir. 1988) (recognizing that lack of experience in a particular field can affect the lodestar determination).

Respondent also cites generally to other special masters' decisions awarding lower hourly rates (*see* Fee App. Opp. at 7-10), but many of these (given inflation) are too old to have much persuasive power today. Thus, Respondent quotes a special master's decision that the 2009 forum rate range for attorneys with over ten years of experience was $250 to $375/hour. *Hall v. Sec'y of Health & Human Servs.*, No. 02-1052V, 2009 WL 3423036 (Fed. Cl. Spec. Mstr. Oct. 6, 2009). Adjusted for inflation, that range of rates is mostly comparable to the forum rates relevant to the present analysis.

After evaluation of all of the above and weighing Mr. Kalinowski's demonstrated experience within the Vaccine Program against his more limited experience as a practicing attorney, I conclude that the hourly rate requested by Petitioner is too high. Mr. Kalinowski should not command a higher billing rate than the most senior attorneys at MCT, or one commensurate with far more experienced counsel. Mr. Kalinowski's expertise in handling Vaccine Program cases must be credited, but it must also be discounted by his overall experience, in comparison both to his MCT partners as well as other practitioners. Indeed, the oldest published case of which I am aware in which Mr. Kalinowski appeared as counsel for a Program petitioner is from 2011 *(see, e.g., Long v. Sec'y of Health & Human Servs.*, No. 10-870V, 2011 WL 2036710 (Fed. Cl. Spec. Mstr. Apr. 10, 2011)), meaning he has approximately four years of demonstrable experience as petitioner's counsel in the Vaccine Program, and five years total (counting his pre-clerking year of work) as a practicing attorney.

Instead, I find that an hourly rate of $305/hour for work completed in 2014 is justifiable and reasonable. This rate is consistent with prior special master determinations as to the proper range of hourly forum rates. It is also consistent with what other partners at MCT have been awarded.

As Respondent correctly points out, the appropriate rate for current work cannot be applied retroactively to work done in previous years, as doing so would effectively be the equivalent of charging the government interest. *Hocraffer v. Sec'y of Health & Human Servs.*, No. 99-533V, 2011 WL 3705153, at *17-19 (Fed. Cl. Spec. Mstr. July 25, 2011); Resp. at 6. As a result, employing the CPI Calculator, Mr. Kalinowski's rate of $305/hour is hereby adjusted to $281/hour for 2010, $290/hour for work performed in 2011, $296/hour for work performed in 2012, and $300/hour for work performed in 2013. This results in an attorney's fee award of $51,023.40 in total ($14,853.50 for 48.7 hours in 2014; $20,610.00 for 68.7 hours in 2013; $5,120.80 for 17.3 hours in 2012; $10,411.00 for 35.9 hours in 2011; and $28.10 for .1 hours in 2010).

   B.    *MCT's Paralegal Rates*

A similar analytic approach is applied in determining the hourly rate for paralegal services. *See, e.g., Dimatteo v. Sec'y of Health & Human Servs.*, No. 10-556V, 2014 WL 1509320, at *6 (Fed. Cl. Spec. Mstr. Mar. 27, 2014).

Here, Petitioner is asking for a rate between $75 to $145/hour for paralegals, depending on whether the paralegal is certified or not,[14] and increasing over the four years that this matter was litigated. Ex. 23 (ECF No. 53-1). Respondent proposes a constant $91/hour for paralegals and $112/hour for certified paralegals, justifying her position on the basis of a 2012 Florida bar survey showing that paralegals at "a significant percentage of law firms (thirty-four percent to be exact) charge an hourly rate in the $81.00 to $100.00 range." Fee App. Opp. at 12 (Ex. E). Respondent also cites *English v. Sec'y of Health & Human Servs.*, No. 01-61V, 2006 WL 3419805 (Fed. Cl. Spec. Mstr. Nov. 9, 2006), as evidence that MCT's paralegals have previously been awarded no more than $75/hour (a figure that, brought up to date in light of inflation, would amount to $87.32). In rebuttal, Petitioner notes that an even more significant number of firms bill paralegals over the rate of $100/hour in 2012, with 36 percent having billed at $101/hour or more. Reply at 15; Resp. Ex. E (ECF No. 57-1).

The range of rates requested by Petitioner is facially reasonable, especially given the *de minimis* amount of inflation since 2013. Indeed, special masters have more recently held that paralegal rates as high as $125/hour were reasonable (without taking into account whether the paralegal was certified or not). *See, e.g., Yang v. Sec'y of Health & Human Servs.,* No. 10–33V, 2013 WL 4875120, at *4 (Fed. Cl. Spec. Mstr. Aug. 22, 2013); *Brown v. Sec'y of Health & Human Servs.,* No. 09–426V, 2012 WL 952268, at *3 (Fed. Cl. Spec. Mstr. Feb. 29, 2012); *Broekelschen,* 102 Fed. Cl. 719 at 723. I find that the same $125/hour rate should be applied herein.

Accordingly, I hereby grant each of the different rates requested by Petitioner for the

---

[14] Certified paralegals are those with experience that have passed the Certified Paralegal Exam and have completed additional education requirements.

MCT paralegals for all work completed at $125/hour or less. I only adjust downward the small amounts of time billed at rates higher than $125/hour. The time logged by paralegals (41.6 hours) at $135/hour will therefore be reduced based upon the adjusted rate of $125/hour, and the 0.1 hour billed at $145/hour will be similarly reduced. This amounts to a total reduction in paralegal fees of $418.

C.     *The Total Hours Billed Were Not Excessive.*

Over approximately four years and three months, Petitioner's counsel plus paralegals expended 235.1 hours of billable work time in total. Of that total, only 16.7 hours were spent in the pre-filing period (approximately eight months from the time MCT obtained Mr. Scharfenberger as a client to the date of filing). Mr. Kalinowski's time accounts for 170.7 hours of that total, versus 64.4 hours expended by MCT paralegals.

Respondent offers only general objections to the number of hours billed, arguing that the billing records reflect inefficiency and/or duplicative billing for *de minimis* legal tasks. Respondent does not, however, substantiate these assertions with concrete examples from the billing records (Fee App. Opp. at 12-14) – despite the fact (as Petitioner correctly observes) that Respondent may not simply contest the reasonableness of time expended in conclusory fashion. *Saxton*, 3 F.3d at 1521-22; *Broekelschen*, 102 Fed. Cl. at 728–29; *Guy*, 38 Fed. Cl. at 406; *Edgar*, 32 Fed. Cl. 506. Absent identification of specific instances of billing that was excessive or duplicative, I am not required to engage in this analysis in Respondent's stead, thereby (unnecessarily) "consuming . . . judicial resources." *Caves v. Sec'y of Health & Human Servs.*, No. 07-443V, 2012 WL 6951286 (Fed. Cl. Spec. Mstr. Dec. 20, 2012). While I give some consideration to Respondent's generalized objections, they lack the force they would otherwise have were they properly substantiated.[15]

Respondent's two generalized contentions can be separately considered. First, Respondent accuses Petitioner's counsel of inefficiency, because this was merely a flu vaccine/GBS case in which the "damages issues were fairly straightforward," requiring no substantial expenditure of attorney time to resolve. Fee App. Opp. at 13-14. Undoubtedly Respondent often settles similar kinds of actions, and Vaccine Program counsel should be encouraged in all cases to act expeditiously rather than "churn" the bill, hopeful of a large fee award in the end. However, the record shows that this case was initially contested by Respondent. *See* Rule 4 report (ECF No. 14). Indeed, Petitioner had to provide additional evidence, in the form of a multitude of medical records, before Respondent was prepared to

---

[15] In an effort to portray Respondent's generalized objections as an abandonment of their arguments against the reasonableness of the hours billed, Mr. Scharfenberger also invokes Vaccine Rule 8(f), which states that "[a]ny fact or argument not raised specifically in the record before the special master will be considered waived and cannot be raised by either party in proceedings on review of a special master's decision." Vaccine Rule 8(f). But this rule does not prevent me from looking at the billing record *sua sponte* in my effort to evaluate whether the requested fees were reasonable. *See Sabella*, 86 Fed. Cl. at 208-09; *Perreira*, 27 Fed. Cl. at 34.

engage in settlement negotiations. Furthermore, Respondent contested whether Mr. Scharfenberger could satisfy the six-month requirement for proving that his symptoms lasted a sufficient duration – a fact question that required delving into the medical record. *Id.* There were enough reasonable factual disputes (as the procedural history reflects) in the action as it progressed to undermine Respondent's assertions that the matter was easily resolved, and my review of the billing records does not reveal obvious inefficiencies in attorney or paralegal time devoted to the case.

Such an expenditure of numerous hours on a matter that ultimately settled is also not unexpected for Vaccine Program cases. Settlement can require the parties to analyze both the merits of a petitioner's claim, as well as attempt to calculate a fair compensation award based on the nature of a petitioner's injuries. *Masias v. Sec'y of Health & Human Servs.*, No. 99-697V, 106 Fed. Cl. 700, 702 (2012) (emphasizing the "any proceeding" language of Vaccine Act 15(e)(1) to say that the attorney's fee award "arising from the settlement" is mandatory). I therefore do not give credence to this objection, as it appears (especially in light of the stipulated settlement sum that Mr. Scharfenberger was ultimately awarded) that the time expended was necessary to arrive at the settlement agreement struck by the parties.

Second, Respondent contends that "there are many entries for tasks that are *de minimis* in nature and are not billable legal work." Fee App. Opp. at 13. For legal support, Respondent offers a long string cite in a footnote. *Id.* I am legally empowered to reduce or reject attorney time misspent on ministerial or administrative tasks, but the billing records herein do not so compel me. Indeed, some of the cases cited by Respondent actually work against her, as they merely underscore the inappropriateness of attorneys performing "simple functions" that are more properly the province of paralegals. *See, e.g.*, *Plott v. Sec'y of Health & Human Servs.*, No. 92-0633V, 1997 WL 842543, at *4 (Fed. Cl. Spec. Mstr. Apr. 23, 1997). In the present case, the *de minimis* non-billable work (such as document maintenance) that Respondent points to was *not* performed by counsel, and was billed at the paralegal hourly rates discussed above.

Similarly, I discount Respondent's objections to "any billing for such purely ministerial tasks" as "reviewing ECF notices." Fee App. Opp. at 13. Upon review of the billing records, I can identify very few hours so billed over the four-year period of Mr. Scharfenberger's representation, particularly in comparison to the amount of substantive work that was completed. Only 12.9 hours of the total bill appear to have been devoted to work described solely as reviewing electronic notices or the case file, equivalent to three hours per year (based on the four-year period of representation) – and this time was almost exclusively billed at the paralegal rate.[16] I therefore do not find that Petitioner's billed hours were excessive or warrant a reduction.

---

[16] At most there is a total of three hours billed at the attorney rate over a period of four years for such ECF docket-related tasks. Ex. 23, MCT Fees and Costs (ECF No. 53-1). That is less than an hour a year spent by the attorney on tasks Respondent claims are *de minimis* in nature – suggesting that Petitioner's counsel devoted the appropriate amount of time to these matters.

D.      *Expert Expenses*

1. <u>The Clifton Expenses Are Reasonable</u> – Mr. Scharfenberger requests an award of costs in the amount of $11,420.50 to satisfy the fees of Clifton, the accounting firm that analyzed Petitioner's lost earnings and provided Petitioner's counsel with an expert report to that end. Respondent contends that the Clifton expert costs were unwarranted because resolution of the action required no accounting expertise. Fee App. Opp. at 14. In reply, Petitioner asserts that Clifton's expert report was necessary to evaluate the amount of Mr. Scharfenberger's lost earnings, because it required "specialized skill" to account for the "election cycles and business cycles" that affected his lost wages. Reply at 16.

As with determining the proper amount of recoverable attorney's fees, the reasonableness requirement also applies to costs, including consultant and expert fees. *Torday v. Sec'y of Health & Human Servs.*, No. 07-372V, 2011 WL 2680717, at *1 (Fed. Cl. Spec. Mstr. May 4, 2011). Whether an expense is reasonable "may be evaluated from a paying client's perspective . . . If a hypothetical yet reasonable client would be willing to pay for an expert's report then it is appropriate to award compensation for that expert's report." *Torday*, 2011 WL 2680717, at *2 (citing *Hensley*, 461 U.S. at 433-34); *see also Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany and Albany County Bd. of Elections*, 522 F.3d 182, 184 (2d Cir. 2008)).

Because this matter was settled, it is difficult for me to determine after the fact the Clifton report's value to the settlement process. *See Torday*, 2011 WL 2680687, at *7 (settlement "has the unfortunate side effect of leaving the special master without intimate knowledge of the efforts that take place in reaching the agreement"). I can, however, make some inferences about the utility of the Clifton report based on the existing record.

Mr. Scharfenberger has a political marketing business, which exhibits a two-year revenue cycle. Ex. 42 (Lost Earnings Damages Report) at 3 (ECF No. 59-1). As a result, the impact of Mr. Scharfenberger's illness on his compensation was not necessarily evident during the immediate period he was sick (*Id.*), making the calculation of his lost wages more complicated. This fact is further bolstered by the repeated assertions in Petitioner's status reports filed throughout the settlement process, including those filed on May 14, 2012, and August 21, 2012, that Petitioner's lost wages present complicated issues of calculation. ECF No's 24 and 26.

Clifton's expert report estimated Petitioner's lost wages at $79,215. Ex. 42, Lost Earnings Damages Report (ECF No. 59). After reviewing the report, I find this estimation to be reasonable. And given the magnitude of the amount ultimately awarded Petitioner ($270,000), it appears that lost wages constituted some percentage of the settlement sum. It is thus reasonable to make some costs award for expenses incurred in the lost wages analysis.

The Clifton experts charged $300 per hour for their services, and worked approximately 38 hours reviewing Mr. Scharfenberger's files. Pet'r's Ex. 41 at 2 (ECF No. 54). Such files included nine years of federal corporate tax returns for Scharfenberger Company, nine years of Mr. Scharfenberger's personal income tax returns and medical bills, and unaudited financial statements. *Id*. at 13. Given the extensive documentation that had to be reviewed, and taking into account (as best I can after the fact) that the lost wages calculation was likely a component of the total sum ultimately awarded to Petitioner, it is logical to conclude that a reasonable client would have been willing to incur such expert costs. I find Petitioner's description of the intricacies and necessity of the accountant's work to be persuasive. I will therefore award the entirety of the costs associated with the Clifton report.

          2.    <u>Expenses for Zuckerman Attorneys</u> – As discussed above, two attorneys from the Zuckerman firm performed work in preparing a declaration opining as to the appropriate hourly rate for Mr. Kalinowski in the present case. *See generally* Ex. 26 (ECF No. 53-4). Mr. Murphy and another Zuckerman attorney, Adam Abelson, Esq., charged $850/hour and $410/hour, respectively, for their services, and Petitioner requests that they be paid in full. Respondent objects that employing experts on the fee calculation issue was unnecessary given their "lack of familiarity with the Vaccine Program and the conclusory nature of the expert report." Fee App. Opp at 14-15. Respondent also objects to the very high rates charged for such expert services. *Id*. at 15.

          Although successful Vaccine Program petitioners are entitled to recover reasonable costs, "an attorney does not have a blank check to hire anyone as a consultant at any rate to perform any type of service." *See, e.g.*, *Mooney v. Sec'y of Health & Human Servs*., No. 05-266V, 2014 WL 7715158, at *13 (Fed. Cl. Spec. Mstr. Dec. 29, 2014). Rather, as the Supreme Court has held, costs are not to be awarded for work that is not necessary to a case. *Hensley*, 461 U.S. at 434; *Torday*, 2011 WL 2680717, at *2. Compensation for experts that expend "hours that are excessive, redundant, or otherwise unnecessary" should not be awarded. *Kuperus v. Sec'y of Health & Human Servs.*, No. 01-0060V, 2006 WL 3499516, at *3 (Fed. Cl. Spec. Mstr. Nov. 17, 2006) (citing *Hensley,* 462 U.S. 424 at 434). I may disallow unnecessary or excessive costs in their entirety. *Sabella*, 86 Fed. Cl. 201 at 221-22.

          Here, it is far from evident that Petitioner required outside expert assistance to justify the requested billing rates. As already noted above, Petitioner's attempts to harness the *Laffey* matrix in order to define upwards the proper forum rate for Vaccine Program attorneys were contrary to controlling law. *Rodriguez*, 2009 WL 2568468, at *4. To make his case on the requested fees, Mr. Scharfenberger needed only to rely on existing Vaccine Program case law involving fee requests, as well as the experience of attorneys who regularly appear in Vaccine Program cases (including Mr. Kalinowski's MCT colleagues like Mr. Maglio, who in fact provided a declaration in support of the present fee petition). The Zuckerman attorneys may well be competent in helping resolve attorney-related disputes in other contexts, but they have no

demonstrated expertise with the matters of this Court either generally or specifically. I thus did not find their input useful in calculating Mr. Kalinowski's proper billing rate.

Moreover, even if the Zuckerman attorneys had offered useful expert input, the rates they request for their assistance are unreasonable as far as the Vaccine Program goes. Petitioners are responsible for monitoring an expert's fees to ensure that the fees are reasonable. *Torday*, 2011 WL 2680717, at *3 (citing *Simon v. Sec'y of Health & Human Servs.*, No. 05-941, 2008 WL 623883, at *2 (Fed. Cl. Spec. Mstr. Feb. 21, 2008)). Petitioner has established no basis for an award of such facially high rates for expert assistance with a fee petition. These rates exceed the high end of rates awarded medical and scientific experts on entitlement matters, which inherently involve the resolution of more complex matters directly relevant to entitlement awards. *See, e.g.*, *Pestka v. Sec'y of Health & Human Servs.*, No. 06-708V, slip op. (Fed. Cl. Spec. Mstr. Mar. 25, 2015) (awarding an expert $300/hour for his time as a consultant over Respondent's objections).

Due to the excessive nature of the Zuckerman attorney costs, and the fact that expert assistance was unnecessary in determining the proper hourly rate for Mr. Kalinowski, I will not award them. As a result, the entirety of these costs, or $12,561.00, will be deducted from Petitioner's cost request.

## CONCLUSION

Based on all of the above, the following chart sets forth the total calculation of Petitioner's fee award:

| Contested Sum | Amount Requested | Reduction | Total Awarded |
|---|---|---|---|
| Mr. Kalinowski's Fees | $61,983.70 | $10,960.30 | $51,023.40 |
| Paralegals' Fees | $7,694.10 | $418.00 | $7,276.10 |
| Clifton Larson Allen Costs | $11,420.50 | none | $11,420.50 |
| Zuckerman Spaeder Costs | $12,561.00 | $12,561.00 | none |
| Other Costs | $9,493.71 | none | $9,493.71[17] |

I reduce Petitioner's fee application by the amount of $23,939.30, thereby awarding Petitioner a total of $79,213.71. This amount reflects the total amount awarded for Petitioner's four motions for attorneys' fees and costs, and includes the three supplemental motions seeking fees associated with litigating this dispute. Accordingly, an award shall be made in the form of a

---

[17] Petitioner labels some of these as miscellaneous "other costs". As noted above, however, Respondent has not objected to these costs, and because I find them reasonable I hereby include them in the award without adjustment.

check jointly payable to petitioner and the law firm of Maglio Christopher and Toale, PA, in the amount of **$79,213.71.**

In the absence of a motion for review filed pursuant to RCFC Appendix B, the clerk of the court **SHALL ENTER JUDGMENT** in accordance with the terms of this decision.[18]

**IT IS SO ORDERED.**

s/Brian H. Corcoran
Brian H. Corcoran
Special Master

---

[18] Pursuant to Vaccine Rule 11(a), the parties may expedite entry of judgment if (jointly or separately) they file notices renouncing their right to seek review.