# In the United States Court of Federal Claims

No. 11-221V
(Filed Under Seal: November 10, 2015) [1]
(Filed for Publication: December 4, 2015)

* * * * * * * * * * * * * * * * * * * * * * * * *
|  |  |
|---|---|
| **SCOTT SCHARFENBERGER,** | National Childhood Vaccine Injury Act; 42 U.S.C. § 300aa-15(e); Attorney's Fees and Costs; Forum Rate; Expert Fees; Award of Fees and Costs Associated with Motion for Review. |
| Petitioner, | |
| v. | |
| **SECRETARY OF HEALTH AND HUMAN SERVICES,** | |
| Respondent. | |

* * * * * * * * * * * * * * * * * * * * * * * * *

Jennifer Anne Gore Maglio, Maglio Christopher & Toale, 1751 Main Street, 2nd Floor, Sarasota, FL 34236, for Petitioner. Isaiah Richard Kalinowski, Of Counsel.

Benjamin C. Mizer, Rupa Bhattacharyya, Vincent J. Matanoski, Gabrielle M. Fielding, Darryl R. Wishard, United States Department of Justice, Civil Division, Torts Branch, P.O. Box 146, Benjamin Franklin Station, Washington, D.C. 20044, for Respondent.

---

**OPINION**

---

**WILLIAMS**, Judge.

This vaccine injury case comes before the Court on Petitioner's Motion for Review of the Special Master's decision reducing Petitioner's requested attorney's fees and costs from $103,153.01 to $79,213.71. Scharfenberger v. Sec'y of Health & Human Servs., No. 11-221V, 2015 WL 3526559 (Fed. Cl. Spec. Mstr. May 15, 2015) ("SM Op."). The Court affirms the decision of the Special Master. In addition, the Court awards Petitioner $22,412.76 in attorney's fees and costs related to this Motion for Review.

---

[1]   Pursuant to Vaccine Rule 18 of the Rules of the United States Court of Federal Claims, the Court issued its opinion under seal to provide the parties an opportunity to submit redactions. Neither party filed proposed redactions. Accordingly, the Court publishes this opinion.

**Background**

On April 8, 2011, Petitioner Scott Scharfenberger filed a petition for compensation under the National Childhood Vaccine Injury Act, 42 U.S.C. § 300aa-10 to 34 (2012) ("Vaccine Act"), alleging that he suffered from Guillain-Barré syndrome ("GBS") as a result of an influenza vaccine. SM Op. *1. After initiating the case, Petitioner filed medical records relevant to his claim. On October 14, 2011, Respondent filed a Vaccine Rule 4(c) report asserting that Petitioner's claim was not appropriate for compensation. In December of 2011, settlement negotiations began, and continued for the next two years. During this time, Petitioner prepared filings, submitted additional medical records, and worked with an accounting firm to accurately estimate his lost wages. On December 13, 2013, the parties engaged in a mediation session, which was successful. The parties filed a stipulation requesting an award of compensation, and the Special Master issued a damages decision on February 7, 2014. Judgment was entered on February 11, 2014, awarding Petitioner a lump sum of $270,000.

On November 24, 2014, Petitioner filed a motion for attorney's fees and costs. Id. at *2. In his motion, Petitioner requested $61,983.70 in attorney's fees for his attorney Isaiah Kalinowski, at a rate of $361 per hour. Petitioner also requested $7,694.10 for paralegal work, based on rates ranging from $75 to $145 per hour. Petitioner sought costs in the amount of $33,475.21 for an accounting firm engaged to provide a lost wages calculation, and the services of William Murphy, Esq. and Adam Abelson, Esq., attorneys at the law firm of Zuckerman Spaeder, LLP who prepared a declaration from Mr. Murphy, an experienced Maryland and D.C. litigator and partner at the firm's Baltimore office. In his declaration, Mr. Murphy set forth his opinion that the attorney and paralegal rates requested by Petitioner were reasonable, and even low, for practitioners in the District of Columbia, based upon an analysis of the Laffey matrix[2] and his own knowledge of the hourly rates charged by law firms in that forum. See Murphy Decl. ¶¶ 16-18. In addition to the declaration of Mr. Murphy, in support of his requested fees Petitioner submitted affidavits from Mr. Kalinowski and Altom Maglio, a partner at Maglio Christopher & Toale, where Mr. Kalinowski was also a partner. Petitioner also claimed $9,493.71 in unopposed costs.

In his decision, the Special Master addressed the four elements of Petitioner's fee application that were challenged by Respondent: Mr. Kalinowski's requested hourly rate; the paralegals' hourly rates; the total number of hours billed; and the expert expenses for ClifonLarsonAllen LLP, and Zuckerman Spaeder, LLP. SM Op. *4.

---

[2]   The Department of Justice maintains "a schedule of rates . . . to compensate attorneys prevailing in 'complex federal litigation,'" commonly referred to as the Laffey matrix. Rodriguez v. Sec'y of Health & Human Servs., 632 F.3d 1381, 1383 (Fed. Cir. 2011), cert. denied, Rodriguez v. Sebelius, 132 S.Ct. 758 (2011). The Laffey matrix originated in Laffey v. Nw. Airlines, Inc., where the United States District Court for the District of Columbia considered a matrix listing the hourly rates for lawyers of differing experience levels. 572 F. Supp. 354, 371-72 (D.D.C. 1983), aff'd in part, rev'd in part on other grounds, 746 F.2d 4 (D.C. Cir. 1984), cert. denied, 472 U.S. 1021 (1985). "The adjusted Laffey matrix . . . grows at the rate of inflation in the legal services component of the national [Consumer Price Index]." Thomas v. D.C., 908 F. Supp. 2d 233, 248 (D.D.C. 2012).

2

As to Mr. Kalinowski's requested hourly rate, the Special Master first found that the Laffey matrix was not controlling, though he would consider it in deciding the appropriate rate. The Special Master next turned to defining the relevant forum for determining reasonable fees. While Petitioner argued that the relevant forum should be Washington, D.C. generally, Respondent argued that the forum should be narrowed to the Court of Federal Claims or the Vaccine Program. The Special Master agreed with Respondent, reasoning:

> Even though the Federal Circuit has held that the forum rate used for Vaccine Program attorneys should be that of the District of Columbia generally, it has also held that a "reasonable" hourly rate is, at bottom, defined as the rate "prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." Here, the Vaccine Program itself provides the most relevant baseline for comparing attorney billing rates – given the differences between the challenges of such litigation versus the more onerous tasks imposed on litigators subject to the federal rules and other procedural and evidentiary burdens outside the Vaccine Program. The fact that Vaccine Program attorneys are (in most cases) assured of some compensation for their work, unlike their counterparts litigating in federal district courts, also bears on the matter.
>
> Thus, when determining what a reasonable hourly rate is, it is appropriate to focus my analysis on the Vaccine Program, which is highly specific in its form and substance.

Id. at *6 (internal quotations and citations omitted) (emphasis original).

Having established the Vaccine Program as the appropriate forum, the Special Master considered cases awarding reasonable attorney's fees for Vaccine Program attorneys in Washington, D.C., adjusted for inflation, to find that in 2015, "a reasonable range for attorneys with ten or more years of experience providing services in the Vaccine Program in Washington, DC" was $272.66 to $409.49 per hour. Id. To determine where Mr. Kalinowski fell within that range, the Special Master turned to the evidence submitted by Petitioner. First, the Special Master reiterated that the Laffey matrix "does not have the precedential force that Petitioner seeks to imbue it with, and otherwise does not control this analysis." Id. at *7. Second, the Special Master found that the declaration of Mr. Murphy did not provide any assistance to his analysis, because Mr. Murphy had no direct Vaccine Program experience, and was not admitted to practice in the Court of Federal Claims. Id. at *8. Further, the Special Master noted that other special masters had not required expert assistance in determining a proper hourly rate to be paid a Vaccine Program attorney, and that he did not request that Petitioner "go to the trouble of retaining an outside expert to opine on fee issues." Id.

The Special Master found the experience of Mr. Kalinowski himself "[f]ar more relevant" to his determination. Id. at *8. The Special Master noted that, upon graduation from law school in 2005, Mr. Kalinowski spent 18 months in private practice, and then spent the next four years as a law clerk in the Office of Special Masters. Id. Afterwards, Mr. Kalinowski joined Maglio Christopher & Toale, a firm that regularly represents Vaccine Program petitioners, where he became a partner in 2012. Id. At the time of the Special Master's decision, Mr. Kalinowski was identified as counsel in 21 active Vaccine Program cases. Id. At present, Mr. Kalinowski has 10 years of total experience, and six years of litigation experience. The Special

3

Master found that "Mr. Kalinowski's experience litigating Vaccine Program cases for petitioners should be reflected in the ultimate rate determination herein – as should the fact that he has less overall experience than other Vaccine Program attorneys who command rates commensurate with what Petitioner requests." Id.

The Special Master further found that "[t]he hourly rate for Mr. Kalinowski's services should also fit within the context of billing rates that other [Maglio Christopher & Toale] lawyers have obtained." Id. Of particular note, the Special Master found that "[t]aking into account inflation, Mr. Maglio and Ms. Toale ('name' MCT partners with 42 years of experience between them)," were recently awarded hourly rates in the range of $271 to $300 per hour. Id. The Special Master noted that, in a recent case, "Ms. Toale was awarded $300/hour for work performed in 2011-2013 - $302.27/hour for work performed in 2015 after adjusted for inflation." Id. (referencing Ms. Toale's awarded fees in O'Neill v. Sec'y of Health & Human Servs., No. 08-243V, 2015 U.S. Claims LEXIS 620, at *16 (Fed. Cl. Spec. Mstr. Apr. 28, 2015)). The Special Master found the fact that Mr. Maglio and Ms. Toale's rates were lower than those requested by Petitioner, despite their status as name partners with greater overall experience, to be "significant," because "[f]irms like MCT with regular Vaccine Program practices observe rate differentials among their attorneys," and "gradation in billing is common at law firms and is a sensible, market-based approach to charging clients based on the relative experience of their attorneys." Id. at *9. Thus, the Special Master concluded that "although Mr. Kalinowski is a partner at MCT, his billing rate should reflect what his own firm successfully charges for like-situated, or more experienced, attorneys." Id.

The Special Master considered Respondent's argument that the $335 per hour rate awarded a New York City-based attorney with more than 40 years overall experience, but nine years of Vaccine Act experience, for work performed in 2009, was evidence that Petitioner's attorney should be awarded a lower rate. Nonetheless, the Special Master found:

> Although this one instance may counsel against providing a comparably high rate in this case given Mr. Kalinowski's comparatively less overall experience, it does not invalidate the fact that Mr. Kalinowski has significant overall Vaccine Program experience (including his time at the Office of Special Masters) that must be taken into account.

Id. (emphasis in original) (citations omitted). Consequently, the Special Master rejected Respondent's suggested rate of $215 to $231 per hour. Id. at *9.

The Special Master was also unpersuaded by Respondent's citations to several other special masters' decisions awarding lower hourly rates, as they were "too old to have much persuasive power today," when taking inflation into account. Id. (citing Resp't Opp'n. at 8-10). These decisions were from 2009-12, and the rates ranged from $250 to $375 per hour.

Ultimately, the Special Master concluded:

> After evaluation of all of the above and weighing Mr. Kalinowski's demonstrated experience within the Vaccine Program against his more limited experience as a practicing attorney, I conclude that the hourly rate requested by Petitioner is too high. Mr. Kalinowski should not command a higher billing rate than the most

4

> senior attorneys at MCT, or one commensurate with far more experienced counsel. Mr. Kalinowski's expertise in handling Vaccine Program cases must be credited, but it must also be discounted by his overall experience, in comparison both to his MCT partners as well as other practitioners. Indeed, the oldest published case of which I am aware in which Mr. Kalinowski appeared as counsel for a Program petitioner is from 2011 (see, e.g., Long v. Sec'y of Health and Human Servs., No. 10-870V, 2011 WL 2036710 (Fed. Cl. Spec. Mstr. Apr. 10, 2011)), meaning he has approximately four years of demonstrable experience as petitioner's counsel in the Vaccine Program, and five years total (counting his pre-clerking year of work) as a practicing attorney.
>
> Instead, I find that an hourly rate of $305/hour for work completed in 2014 is justifiable and reasonable. This rate is consistent with prior special master determinations as to the proper range of hourly forum rates. It is also consistent with what other partners at MCT have been awarded.

Id. at *9-10. The Special Master further found that the appropriate rate for current work could not be applied retroactively to work done in previous years, and adjusted Mr. Kalinowski's rate using the Consumer Price Index Calculator as follows: $281 per hour for 2010; $290 per hour for 2011; $296 per hour for 2012; $300 per hour for 2013. Id. at *10.

The Special Master applied a "similar analytic approach" to the paralegals' hourly rates. Id. (relying on Dimatteo v. Sec'y of Health & Human Servs., No. 10-556V, 2014 WL 1509320, at *6 (Fed. Cl. Spec. Mstr. Mar. 27, 2014)). Petitioner sought rates between $75 and $145 per hour for paralegals, reflecting the certification status of some paralegals at the firm. Id. The Special Master found that the range of rates requested by Petitioner was facially reasonable, noting that "special masters have more recently held that paralegal rates as high as $125/hour were reasonable (without taking into account whether the paralegal was certified or not)." Id. The Special Master therefore "grant[ed] each of the different rates requested by Petitioner for the MCT paralegals for all work completed at $125/hour or less," and "only adjust[ed] downward for the small amounts of time billed at rates higher than $125/hour." Id. at *12.

Having determined the reasonable rates for Petitioner's counsel and paralegals, the Special Master turned to the determination of a reasonable number of hours expended. Id. at *11-12. Over Respondent's objection, the Special Master did "not find that Petitioner's billed hours were excessive or warrant a reduction." Id. at *12. The Special Master therefore awarded Petitioner $51,023.40 in attorney's fees, and $7,276.10 in paralegals' fees. Id. at *14.

Finally, the Special Master turned to Petitioner's contested requests for expert costs. Id. at *12-13. As to the costs associated with retaining the accounting firm CliftonLarsonAllen LLP, the Special Master awarded the entirety of the costs requested by Petitioner. Id at *13. For the $12,561 in costs for Zuckerman Spaeder, LLP, however, the Special Master found that Petitioner's request was unreasonable and stated:

> Here it is far from evident that Petitioner required outside expert assistance to justify the requested billing rates. As already noted above, Petitioner's attempts to harness the Laffey matrix in order to define upwards the proper forum rate for Vaccine Program attorneys were contrary to controlling law. To make his case on

5

>   the requested fees, Mr. Scharfenberger needed only to rely on existing Vaccine Program case law involving fee requests, as well as the experience of attorneys who regularly appear in Vaccine Program cases (including Mr. Kalinowski's MCT colleagues like Mr. Maglio, who in fact provided a declaration in support of the present fee petition). The Zuckerman attorneys may well be competent in helping resolve attorney-related disputes in other contexts, but they have no demonstrated expertise with the matters of this Court either generally or specifically. I thus did not find their input useful in calculating Mr. Kalinowski's proper billing rate.

Id. (internal citations omitted). Accordingly, the Special Master denied all costs associated with Zuckerman Spaeder, LLP. Id.

The Special Master awarded $9,493.71 in unopposed miscellaneous costs. Id. Ultimately, the Special Master awarded Petitioner a sum of $79,213.71 for fees and costs. Id.

## Discussion

### Jurisdiction and Standard of Review

This Court exercises jurisdiction pursuant to Section 300aa-12(a) of the Vaccine Act. In reviewing a decision rendered by a special master, this Court may: (1) uphold the findings of fact and conclusions of law by sustaining the special master's decision; (2) set aside any findings of fact or conclusions of law "found to be arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" and issue its own findings of fact or conclusions of law; or (3) "remand the petition to the special master for further action in accordance with the court's direction." 42 U.S.C. § 300aa-12(e)(2)(A)-(C) (2012); see Saunders v. Sec'y of the Dept. of Health & Human Servs., 25 F.3d 1031, 1033 (Fed. Cir. 1994) (quoting Munn v. Sec'y of the Dept. of Health & Human Servs., 970 F.2d 863, 870 n.10 (Fed. Cir. 1992)).

While legal conclusions of the special master are reviewed de novo, findings of fact are reviewed under the deferential "arbitrary and capricious" standard of review. In Vaccine Act cases before this Court contesting a special master's determination of reasonable attorney's fees, the applicable standard of review is abuse of discretion. Hall v. Sec'y of Health and Human Servs., 640 F.3d 1351, 1356 (Fed. Cir. 2011) (citing Saxton ex rel Saxton v. Sec'y of Health and Human Servs., 3 F.3d 1517, 1520 (Fed. Cir. 1993). "If the special master has considered the relevant evidence of record, drawn plausible inferences and articulated a rational basis for the decision, reversible error will be extremely difficult to demonstrate." Hines ex rel. Sevier v. Sec'y of the Dept. of Health & Human Servs., 940 F.2d 1518, 1528 (Fed. Cir. 1991). "However, the special master must provide sufficient findings and analysis in [its] opinion for the court, upon review, to determine whether there was an abuse of discretion." Wasson v. Sec'y of the Dept. of Health & Human Servs., 24 Cl. Ct. 482, 483 (1991) (citing Hensley v. Eckerhart, 461 U.S. 424, 437 (1983)).

### Standard for Awarding Attorney's Fees

Special masters are statutorily authorized to determine and award "reasonable attorneys' fees" under the Vaccine Act. 42 U.S.C. § 300aa-15(e)(1) (2012). To calculate such fees, the Federal Circuit has endorsed the lodestar method. Avera v. Sec'y of Health & Human Servs.,

515 F.3d 1343, 1349 (Fed. Cir. 2008). Under the lodestar method, a special master first determines an initial estimate of reasonable fees by multiplying the number of hours reasonably expended by a reasonable hourly rate. Id. at 1347-48. After making the initial estimate, the special master "may then make an upward or downward departure to the fee award based on other specific findings." Id. at 1348.

**The Motion for Review**

Petitioner contends that, in awarding attorney's fees, the Special Master committed two legal errors. First, Petitioner asserts that the Special Master erroneously applied a rate based on Vaccine Act practitioners instead of the District of Columbia forum rate. Second, Petitioner asserts that the Special Master failed to apply the appropriate burden-shifting test for proving reasonable attorney's fees and costs. The Court finds that the Special Master did not commit legal error or abuse his discretion in determining attorney's and paralegal fees or expert costs.

### The Special Master's Reduction of Attorney and Paralegal Hourly Rates and Expert Costs

#### Attorney's Hourly Rate

The Special Master awarded an hourly rate of $305 for Mr. Kalinowski's work. SM Op. *10. Petitioner argues on review that a rate of $361 per hour for attorney work is appropriate, claiming that the Special Master committed legal error by applying an hourly rate based solely on a pool of practitioners in the Vaccine Program, rather than the typical hourly rate charged by practitioners in Washington, D.C. generally.[3] Mot. for Review 12-13.

Finding that "the Vaccine Program itself provides the most relevant baseline for comparing attorney billing rates," the Special Master properly narrowed the relevant forum from the District of Columbia generally to the Vaccine Program or United States Court of Federal Claims. SM Op. *8. The Special Master focused his analysis on the Vaccine Program, relying upon Avera, and noting that "a 'reasonable' hourly rate is, at bottom, defined as the rate 'prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." Id. (emphasis in original) (quoting Rodriguez, 632 F.3d at 1385 (citing Avera, 515 F.3d at 1348)). The Federal Circuit has recognized the propriety of considering the hourly rates of Vaccine Program attorneys in determining the forum rate in Vaccine Act cases. See Masias v. Sec'y of Health & Human Servs., 634 F.3d 1283, 1286 (Fed. Cir. 2011).

In determining the appropriate forum rate here, the Special Master considered the evidence provided by Petitioner, his own experience in the Vaccine Program, and the Laffey matrix, as well as two Vaccine Act cases, Masias, 634 F.3d at 1285-86 and Rodriguez, 632 F.3d at 1382-83. Reflecting the rates adopted in those two cases, adjusted for inflation, the Special Master determined a forum rate range of $272.66 - $409.49 per hour was reasonable. The Special Master explored Petitioner's attorney's professional experience with the Vaccine Act to

---

[3] Petitioner's attorney, Mr. Kalinowski, is employed by a law firm headquartered in Florida, but works in the firm's Washington, D.C. office, and conducted the bulk of his work in this case in Washington, D.C.

situate his rate within the forum rate range, stating: "Mr. Kalinowski's experience litigating Vaccine Program cases for petitioners should be reflected in the ultimate rate determination herein – as should the fact that he has less overall experience than other Vaccine Program attorneys who command rates commensurate with what Petitioner requests." SM Op. *8. This analysis is an appropriate application of the Supreme Court's standard set forth in Blum v. Stenson that the requested rates be "in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." 465 U.S. 886, 895 n.11 (1984).

Although Petitioner acknowledges that Laffey is "not controlling in vaccine litigation," he nonetheless argues that the Special Master's failure to give more weight to the Laffey matrix is evidence that the Special Master applied the incorrect forum rate. However, the Federal Circuit has recognized that "Vaccine Act litigation, while potentially involving complicated medical issues and requiring highly skilled counsel, is not analogous to the 'complex federal litigation' described in Laffey so as to justify use of the Matrix instead of considering the rates charged by skilled Vaccine Act practitioners." Rodriguez, 632 F.3d at 1385. The Special Master correctly found that Rodriguez "primarily held that Laffey should not be used to calculate fees for Vaccine Program cases, as these cases differ significantly from the complex federal litigation for which Laffey was designed." SM Op. *5.

In sum, the Special Master's conclusion that the appropriate hourly rate for Mr. Kalinowski's work was $305 per hour was not legal error or an abuse of discretion.

### Paralegals' Hourly Rate

Petitioner requested paralegal hourly rates ranging from $75 to $145 per hour. The Special Master awarded all requested hourly rates, except those above $125. Id. at *10. Petitioner argues that the Special Master applied an improper national Vaccine Act paralegal rate in order to determine the reasonableness of Petitioner's paralegal fee request, rather than applying the forum rate for paralegals working in the firm's D.C. office, and a local hourly rate for paralegals working from the Sarasota, Florida office. Mot. for Review 13. In response, Respondent argues that the Special Master acted correctly in applying a "similar analytic approach to determining paralegal rates as to determining Attorney Kalinowski's hourly rate" and in "bas[ing] this determination [to reduce paralegal hourly rates above $125] on other recent special master decisions awarding rates of $125.00/hour for similar paralegal work." Resp. 14 (internal citations and quotation marks omitted).

In support of his arguments before the Special Master, Petitioner submitted affidavits from Mr. Kalinowski, another partner at MCT, the President of the Paralegal Association of Florida, Inc., and six Sarasota-based attorneys. The paralegal hourly rates attested to in these affidavits ranged from $75 - $125 per hour for non-certified paralegals and $100 - $150 for certified paralegals. Appl. For Att'ys' Fees and Costs, Exs. 29, 32-38. Petitioner also relied upon two Sarasota County Circuit Court decisions awarding paralegal rates of $120 and $135 per hour. Id. Exs. 39, 40.

Respondent pointed to English v. Sec'y of Health & Human Servs., No. 01-61V, 2006 WL 3419805 (Fed. Cl. Spec. Mstr. Nov. 9, 2006), in which MCT paralegals were "awarded no more than $75/hour (a figure that, brought up to date in light of inflation, would amount to

8

$87.32).” SM Op. *13. Respondent also submitted a 2012 Florida Bar survey, indicating that 34% of Florida law firms charged $81 to $100 per hour for paralegal work. Objs. To Appl. For Att'ys' Fees and Costs 12, Ex. E. The same survey also indicates that 15% of Florida law firms charge above $140 per hour for paralegal work and that 16% of Florida firms charge between $121-$140 for paralegal work. Id.

The appropriate fee award for paralegal work is determined using the lodestar method. First Fed. Savs. & Loan Ass'n v. United States, 88 Fed. Cl. 572, 587 (2009) (citing Hensley, 461 U.S. at 433-34); cf. Richlin Sec. Serv. Co. v. Chertoff, 552 U.S. 571, 589-90 (2008) (holding paralegals can recover Equal Access to Justice Act fees at their "prevailing market rates"). Of the total 64.4 paralegal hours, the Special Master reduced the rate for 41.6 hours billed at $135 per hour and 0.1 hour billed at $145 per hour, crediting these hours instead at a rate of $125 per hour. SM Op. *10. This resulted in a $418 reduction of the paralegal fee award. Id.

The Special Master found that in recent cases special masters had awarded paralegal rates up to $125 per hour and awarded Petitioner the paralegal rates requested, except to the extent they exceeded $125 per hour, relying on Yang v. Sec'y of Health & Human Servs., No. 10-33V, 2013 WL 4875120, at *4 (Fed. Cl. Spec. Mstr. Aug. 22, 2013); Brown v. Sec'y of Health & Human Servs., No. 09-426V, 2012 WL 952268, at *3 (Fed. Cl. Spec. Mstr. Feb. 29, 2012); and Broekelschen v. Sec'y of Health & Human Servs., 102 Fed. Cl. 719, 723 (2011). Id. In each of these cases, the special master found an hourly rate of $125 to be reasonable for paralegal work. However, the petitioners in these cases did not request higher rates. In only one of the cases, Yang, did the respondent dispute the requested paralegal hourly rate, and the rate was upheld on the basis of Brown and Broekelschen having found $125 to be reasonable. 2013 WL 4875120, at *12-13.

In light of the totality of the evidence and the Special Master's reliance upon his own experience and the cited cases, Petitioner has not demonstrated that the Special Master abused his discretion in reducing paralegal fees that exceeded a $125 hourly rate.

**The Special Master Correctly Applied the Burden of Proof**

Petitioner also asserts that the Special Master committed legal error by failing to apply a burden-shifting analysis and a presumption of reasonableness to Petitioner's evidence of the appropriate forum hourly rates. Petitioner argues that once a fee applicant has shown that "the requested rates are in line with those prevailing in the community, the requested rates are presumed reasonable," and that "the burden then shifts to the party opposing fees to rebut the presumption of reasonableness by submitting evidence showing such rates are not in line with the prevailing market rates." Mot. for Review 15 (internal citations and quotation marks omitted) (citing Willis v. U. S. Postal Serv., 245 F.3d 1333, 1341 (Fed. Cir. 2001); SUFI Network Servs., Inc., 113 Fed. Cl. 140, 147 (2013)).

Initially, in a request for attorney's fees and costs, the burden is placed on the petitioner to provide "satisfactory evidence – in addition to the attorney's own affidavits – that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience, and reputation." Blum, 465 U.S. at 895 n.11; see also Wasson, 24 Cl. Ct. at 484 ("The petitioner bears the burden of establishing the hours expended, the rates charged, and the expenses incurred.") (citing Hensley, 461 U.S. at 437).

Further, in the Vaccine Program "it is clear that petitioner bears the burden of proof, and respondent in fact is not required to make any objection for the special master to deny fees and costs . . . ." Torday v. Sec'y of the Dept. of Health & Human Servs., No. 07-372V, 2011 WL 2680687, at *7 (Fed. Cl. Spec. Mstr. Apr. 7, 2011). "In determining attorneys' fees, the special master is not limited to the objections raised by respondent." Lamar v. Sec'y of the Dept. of Health & Human Servs., No. 99-538V, 2008 WL 3845165, at *5 (Fed. Cl. Spec. Mstr. July 30, 2008) (citing Moorhead v. United States, 18 Cl. Ct. 849, 854 (1989)).

In the instant case, as the Special Master correctly found, Petitioner failed to meet his burden of establishing that his requested rates of $361 per hour for attorney's fees and $135 and $145 per hour for paralegal fees were reasonable. As such, the Special Master properly applied the burden of proof.

### Expert Costs

The Special Master is given "reasonably broad discretion when calculating [awards of attorneys' fees and expenses]." Wasson, 24 Cl. Ct. at 483 (citing Hensley, 461 U.S. at 437). "Determining a 'reasonable attorney's fee' is a matter that is committed to the sound discretion of a trial judge, but the judge's discretion is not unlimited. It is essential that the judge provide a reasonably specific explanation for all aspects of a fee determination, including any award of an enhancement." Perdue v. Kenny A. ex rel. Winn, 559 U.S. 542, 558 (2010) (internal quotation and parenthetical omitted). Here, the Special Master provided a "reasonably specific explanation" for his decision to deduct all fees associated with Mr. Murphy's expert report, explaining that he did not require or request this expert opinion and did not find it helpful in resolving the issue of reasonable hourly attorney and paralegal rates. SM Op. *13.

Petitioner claims that the Special Master incorrectly denied the expenses related to the expert report of Mr. Murphy, of Zuckerman Spaeder, LLP. Mot. for Review 14-15. Mr. Murphy opined that the attorney and paralegal rates requested by Petitioner were on the low side of the range in Washington, D.C., based on his experience in the legal market. Murphy Decl. ¶¶ 15, 17-19. Mr. Murphy acknowledged that the Laffey matrix is not controlling in the Court of Federal Claims, but nonetheless opined that it provided a helpful comparison for attorney hourly rates. Id. at ¶¶ 16-17. Petitioner claims that the Special Master improperly applied a national Vaccine Act hourly rate, and thus gave no weight to the expert report.

Given the precedent that attorney's fee rates in the Vaccine Program constitute the applicable forum rate, it was within the Special Master's discretion to determine that the retention of this expert was unnecessary and that his costs were unreasonable and not reimbursable. The Court finds that the Special Master did not abuse his discretion in denying reimbursement of the expert costs associated with the declaration of Mr. William Murphy.

### Fees for this Motion

Petitioner seeks $25,093.46 in attorney's fees and costs incurred in the preparation of his Motion for Review. The requested amount represents 70.3 hours of attorney work at rates of $300 or $361 per hour and 7.4 hours of paralegal work at a rate of $135 per hour, for a total of $23,675 in fees. The fees requested are divided between Mr. Kalinowski ($361 per hour) and a partner at the law firm who has joined this case in place of Mr. Kalinowski for the Motion for

Review, Ms. Jennifer Anne Gore Maglio ($300 per hour), located in Sarasota, Florida. The costs, totaling $1,418.46, represent $1,150.70 in payment of an invoice to Zuckerman Spaeder, LLP[4] and $267.76 in payment to LexisNexis for online research. Respondent objects to the requested hourly rates for those hours billed by Mr. Kalinowski and by the paralegal, "[c]onsistent with the Special Master's decision," but does not object to the $300 per hour rate charged by Ms. Maglio. Resp. 3 n.2. Additionally, Respondent objects to the request for payment of costs to Zuckerman Spaeder, LLP, "for the same reasons stated in the Decision," and because this expense, "for work performed by Attorney Murphy [in preparation of his expert Declaration] in November 2014," should have been "filed with the initial Fee App[lication] or before the Special Master issued his Decision." Resp. 14 n.16. Respondent does not object to the other costs.

The Vaccine Act empowers this Court to award compensation for reasonable attorney's fees and other costs incurred in a Vaccine Act case. 42 U.S.C. § 300aa-15(e)(1). Vaccine Rule 34(b) provides:

> Following review by an assigned judge of a special master's decision on attorney's fees and costs under Vaccine Rule 13, a request for any additional fees and costs relating to such review may be decided either by the assigned judge or by the special master on remand.

RCFC App. B, Rule 34. In light of this Court's adjudication of Petitioner's Motion for Review and familiarity with the arguments of counsel, it is appropriate for this Court to address Petitioner's requested attorney's fees and costs incurred in this proceeding. See Hocraffer v. Sec'y of Health & Human Servs., No. 99-533V, 2011 WL 6292218, at *13 (Fed. Cl. Nov. 22, 2011) (awarding requested fees for preparation of a motion for review).

In determining whether Petitioner's counsel's requested fee award is reasonable, this Court uses the lodestar method, multiplying the number of hours reasonably expended by a reasonable hourly rate, and then assessing whether an upward or downward adjustment is warranted based on other specific findings. Avera, 515 F.3d 1343, 1347-48. The time sheets submitted by Petitioner with this Motion reflect: (1) attorney time by Mr. Kalinowski of 26 hours, spent reviewing and analyzing Respondent's Response to Petitioner's Fee Request, researching relevant case law, and drafting a Reply to the Response; (2) attorney time by Ms. Maglio of 44.3 hours, spent reviewing and analyzing the Special Master's decision, researching cases on fee awards and burden shifting, consulting with peers, and drafting a 20-page Motion for Review setting forth several bases for reversal of the Special Master's decision; and (3) 7.4 hours of paralegal time spent assisting in the preparation and filing of the Reply and this Motion. Mot. for Review Ex. 43.

Upon consideration of the Special Master's Opinion, the research required for the Motion and arguments articulated, the Court finds the number of hours Petitioner's attorney and paralegal expended on this Motion for Review to be reasonable. See Rodriguez v. Sec'y of Health & Human Servs., No. 06-559V, 2013 WL 1189451, at *16 (Fed. Cl. Spec. Mstr. Mar. 1,

---

[4] This invoice reflects expenses from Zuckerman Spaeder, LLP for November 2014, incurred in preparation of the Initial Fee Application.

2013) (awarding compensation for 50 hours for time spent researching, writing, and editing a motion for review of a fee application).

As to the hourly rates charged by Petitioner's counsel for attorney and paralegal work, the Court conforms its award of fees for Mr. Kalinowski and paralegals to the hourly rates previously determined to be reasonable – $305 for Mr. Kalinowski and a maximum paralegal hourly rate of $125. The Court awards Ms. Maglio an hourly rate of $300, as requested. Respondent raised no objection to this hourly rate, and this rate has recently been awarded to another partner in the firm's Florida office. See O'Neill, 2015 U.S. Claims LEXIS 620, at *16 (awarding MCT attorneys their full hourly rate of $300.00 per hour for hours billed in 2011-2013). Consistent with the reasoning stated above, the Court denies costs associated with the expert opinion, and awards costs of $267.76 for online legal research by Petitioner's attorney.

The Court awards Mr. Kalinowski an hourly rate of $305 for 26 hours of work, resulting in an award of $7,930, Ms. Maglio an hourly rate of $300 for 44.3 hours of work, resulting in an award of $13,290, and the paralegals an hourly rate of $125 for 7.4 hours of work, resulting in an award of $925. The Court awards no costs related to Zuckerman Spaeder, LLP but awards $267.76 for legal research by Petitioner's attorney. The total award for fees and costs incurred in preparation of the Reply to Respondent's Response to Petitioner's Motion for Fees and the Motion for Review is therefore $22,412.76. In the Court's view, there are no particular circumstances that warrant an upward or downward adjustment of the reasonable fees and costs.

## Conclusion

The Court sustains the decision of the Special Master awarding Petitioner fees and costs in the amount of $79,213.71. In addition, this Court awards Petitioner fees and costs totaling $22,412.76 related to this Motion for Review. The Clerk shall enter judgment accordingly.

s/Mary Ellen Coster Williams
**MARY ELLEN COSTER WILLIAMS**
**Judge**